**GIBBS et al. v. WOHL.**

**Patent Appeal No. 3145.**

Court of Customs and Patent Appeals.
Dec. 23, 1933.

See, also, 55 F.(2d) 494.

Irvin G. Menikheim, of Washington, D. C., for appellants.

Hauff & Warland, of New York City (William E. Warland, of New York City, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an interference proceeding involving two counts, which were claims taken from the patent of Gibbs and Conover, application for which was filed on February 17, 1917, the patent being issued on November 19, 1918.

Appellants have appealed here from the decision of the Board of Appeals of the United States Patent Office awarding priority of the two counts involved to the appellee.

Wohl, the junior party, filed his application July 9, 1920. He was given the benefit of the Nolan Act of March 3, 1921 (41 Stat. 1313 [35 USCA §§ 80–87]), and, by virtue of section 4887, Revised Statutes (35 USCA § 32), relies for constructive reduction to practice on application No. W–48022, filed June 22, 1916, in Germany, and application No. W–48041, filed June 28, 1916, in Germany, and upon amendments made thereto, as will be referred to more particularly hereinafter.

The invention involved relates to the vapor phase process for the catalytic oxidation of naphthalene at certain temperatures so as to produce phthalic anhydride, phthalic acid, benzoic acid, and naphthaquinones. The process consists of mixing an oxygen-containing gas with heated naphthalene vapors, and passing the mixture over a catalyst consisting of vanadium pentoxide heated to a temperature of from 350 degrees to 550 degrees centigrade. The two counts involved are as follows:

"1. A process for the manufacture of phthalic anhydrid, phthalic acid, benzoic acid, and naphthaquinones, which process consists in subjecting naphthalene in the gaseous state and mixed with an oxygen-containing gas mixture, to the action of vanadium oxids heated to temperatures ranging from 350° to 550° centigrade.

"2. A process for the manufacture of phthalic anhydrid, phthalic acid, benzoic acid, and naphthaquinones, which process consists in subjecting naphthalene in the gaseous state and mixed with atmospheric air to the action of vanadium oxids heated to temperatures ranging from 350° to 550° centigrade."

It will be noted that the only difference between the two counts is in the expression in count 1, "with an oxygen-containing gas mixture," and in count 2, "with atmospheric air."

It is conceded that the invention is a generic one, and that the process of catalytically oxidizing naphthalene to make phthalic an-

hydride by using a vanadium oxide catalyst was not known before the parties hereto contributed their knowledge to the art.

Wohl's application was rejected by reference to the Gibbs and Conover patent, and said patent was the only reference cited. An interference was declared as soon as Wohl was given the benefit of the Nolan Act, supra.

Different phases of the issues involved here have been heard and decided at different times in the United States Patent Office, not only in the present interference counts, but in another interference involving another count, also being a claim taken from the Gibbs and Conover patent.

When confronted with the Gibbs and Conover patent as a reference, Wohl contended that his case came within the provisions of the Nolan Act, supra, and that he was entitled, as his date of conception and reduction to practice, to the date of the filing of his German application W–48041, filed June 28, 1916, or another German application, W–48022, filed June 22, 1916, in which applications, he contended, the invention involved in the counts was disclosed.

The said application filed in Germany, June 28, 1916, mentioned temperatures of 280 degrees to 330 degrees centigrade as examples for carrying out the process. In said application is found the following statement: " * * * If, for instance, a current of air loaded with naphthalene vapors is passed over oxids of vanadium, distributed e. g. upon finely powdered pumice stone or other supports, long slightly yellowish colored needles of phthalic anhydride will sublimate out of the tube already at a temperature of from 280 to 290 degrees Centigrade, whilst some unattacked naphthalene precipitates behind them and carbon dioxide and water are formed. At say from 320 to 330 degrees an entirely white sublimate of pure phthalic anhydride can directly be obtained if the velocity of the air and the contents of naphthalene are suitably regulated. * * * Of course, the temperature, velocity of air and other circumstances must be especially adapted to each other for working on a large scale, as well as for the use of other catalysts. * + * Of course, the most favorable conditions for every single case as to temperature, velocity of air for a given active layer, contents of oxygen and moisture of the gas passed over as well as the concentration of the naphthalene vapor and so on must be ascertained. * * * "

On September 4, 1916, and on Septem-

ber 9, 1916, amendments were offered by Wohl to his German specifications, in each of which amendments, among other things, the temperatures required in the counts involved here were clearly disclosed. These amendments were granted in the patent which issued from the German Patent Office.

Gibbs and Conover claimed August 1, 1916, as their date of conception, and October 15, 1916, as the date for reduction to practice.

The Examiner of Interferences held that the disclosure in Wohl's German application, as originally filed on June 22, 1916, did not disclose the invention of the counts, inasmuch as it did not definitely mention any temperatures within the range specified in the counts, but that the amendment of September 9, 1916, did disclose the invention. He held that, even if Wohl was given this date, notwithstanding the contention that the amendment contained new matter, he would not be entitled to a date earlier than September 9, 1916, as the date of conception and reduction to practice. The Examiner of Interferences then considered the Gibbs and Conover testimony and held that they had conceived the invention not later than September 7, 1916, and that they were diligent from this date to February 17, 1917, when their application was filed. No mention is made in the opinion of the Examiner of Interferences as to the amendment of September 4.

The Board of Appeals, in its decision, said: "The examiner of interferences held that the earliest date which could possibly be accorded Wohl would be September 9, 1916, but he overlooked the amendment of September 4, 1916, which contained the same disclosure as that of September 9, 1916, and Wohl states in his brief on this appeal that he called the attention of the examiner of interferences to the amendment of September 4, 1916, on pages 5 and 85 of his brief below. This slight difference in dates is sufficient to make the testimony of one of the corroborating witnesses of Gibbs and Conover of no effect, as will be later shown."

It appears that, at the time of taking the testimony, a complete copy of the file of the German application W–40841 was placed in evidence, and that therein is shown the amendment of September 4. The Board's decision is based upon the premise that Wohl should be allowed a date as early as September 4, 1916, for the date of conception and reduction to practice, and that the evidence could not be regarded as disclosing a date of conception and reduction to practice of appellants earlier than September 7. In holding that Wohl was entitled to the date of his amendments in his German application, it said: "In our opinion, when the German Patent Office accepted the amendment of September 9, 1916, it was incorporated in and became a part of the application on which the German patent No. 379822 was subsequently granted and we are not in any way concerned with the question of new matter, and we believe that this holding is consistent with Bissell v. Fottinger [42 App. D. C. 597]. On September 9, 1916, Wohl had pending before the German Patent Office an application disclosing the process in issue carried out at temperatures slightly below red heat or within the range 350° to 550° C. as required by the counts and that he is at least entitled to the date of September 9, 1916, for a constructive reduction to practice. * * * "

In view of our conclusions, it is not necessary for us to determine whether or not the disclosure in either of the original applications of Wohl of June 22, 1916, or of June 28, 1916, is a sufficient disclosure of the invention of the counts involved. We think the conclusion of the Board to the effect that Wohl was entitled to a date at least as early as the date of filing his amendments in the German Patent Office for his date of conception and reduction to practice was proper, and we furthermore concur in its view that there is nothing in Bissell v. Fottinger, 42 App. D. C. 597, contra to this conclusion.

As we view the above-cited case, it does not decide the identical issue presented here, but, if it has any bearing on the issue, the language used would seem to support Wohl's contention, and we agree with the views of the Board to the effect that it is not our duty to analyze and pass upon the correctness of the action of the German Patent Office in permitting the amendments involved. We do not regard it as important for us to pass upon the question as to whether the matter inserted by amendment was or was not new matter, and we do not do so. We think it sufficient to say that the amendments were offered and were approved and eventually included in the patent. When offered, they stood as a disclosure. We are not passing upon the validity of the German patent, when adjudged by our standards. We are here trying to ascertain if Wohl made such a disclosure on his amendment dates as would warrant the United States Patent Office tri-

bunals accepting the dates of such disclosure for interference purposes.

We are not holding here, as it is not necessary for us to consider this phase of the case, that a foreign inventor can insert, by amendment to his foreign application, new matter constituting a new invention in his application, and in this country be entitled to the original date of filing his application as his date of conception and reduction to practice of such new matter, even though the foreign patent office granted him his patent including the new matter. The date we are giving to Wohl is not the date of the original application, but the date of the amendment which, we conclude, was prior to any date of conception and disclosure by Gibbs and Conover, as shown in the record.

It is contended by Gibbs and Conover that, even though the date of September 9, 1916, or that of September 4, 1916, is given to Wohl for conception and reduction to practice, nevertheless the Board was unwarranted in awarding priority to Wohl, since the record shows an earlier conception in the patent of Gibbs and Conover, and that they were diligent from that time until a reduction to practice.

It must be recalled that the testimony of appellants was taken substantially eight years after the happenings testified to. Much of the testimony of Gibbs and Conover is not supported by any corroborating evidence. The testimony concerning their claimed date of September 7, if corroborated at all, in vital particulars, would be regarded as very weak testimony to rely upon in overcoming the certain date of Wohl, but, as we view it, there is absolutely no sufficient evidence in the record to show any date of conception and disclosure on the part of Gibbs and Conover prior to September 4. The record does seem to be reasonably clear that Gibbs and Conover did have a conception of the broad principles of the invention in August, and this is not disputed by appellee. As to whether they had a conception of the invention as limited by the terms of the counts, there might be considerable doubt, but it is clear from the record that there was no disclosure of the invention or corroborative proof of conception and disclosure prior to September 7.

We are of the opinion, therefore, that the Board of Appeals, having found that Wohl conceived and reduced the invention to practice as early as September 4, 1916, which is prior to any date which can, upon this record, be awarded to Gibbs and Conover, properly awarded priority in the two counts of this interference to Wohl, and the decision of the Board of Appeals is affirmed.

Affirmed.